## No. 9393.

### Freeman *v.* Hampton.

1. CONTRACT—*Words Construed.* The president of an insolvent bank presented to one of the directors, who was also a depositor, a release of his claim in the latter capacity, and to induce the execution thereof, said to the director; "You shall have your money out of the assets of the bank if this settlement goes through." I will take the assets of the bank, and make the money out of them, and you shall have every nickel." "You shall have all your money back, with interest." *Held* not a promise by the president to pay, but that payment should be made from the assets of the bank.

2. STATUTE OF FRAUDS—*Debt of Another.* In the same case held that if the words used could be construed as a promise to pay the promise was void under the statute of frauds.

*Error to La Plata District Court, Hon. Jesse C. Wiley, Judge.*

*Department One.*

Mr. T. J. O'Donnell and Mr. Canton O'Donnell, Messrs. Smith & Austin, Mr. J. W. Graham, for plaintiff in error.

Messrs. RUSSELL & REESE, for defendant in error.

Opinion by Mr. Justice Teller.

THE parties to this litigation were directors of the Colorado State Bank of Durango, which failed in 1907.

Freeman was president of the bank, and both civil and criminal actions were begun against him, and the other directors, including Hampton, because of the conditions surrounding the closing of the bank.

These officers, particularly Freeman, made vigorous efforts to raise funds to pay the claims of depositors, and in so doing secured from Hampton and some other depositors an agreement that their several claims as depositors should be deferred till the other depositors had been paid.

The assets of the bank were purchased by the United Securities Company, for a sum sufficient to settle the claims against the bank, exclusive of the said deferred claims.

In 1913 Hampton brought this action against Freeman on an alleged promise by Freeman to pay him the amount of his deposit, and the sum of $1,400 paid in by Hampton as a liability on his seven shares of stock.

He had judgment for the amount of his deposit.

There are numerous errors assigned and argued, but it will not be necessary to consider all of them.

The error most strongly urged is that the evidence does not sustain the verdict and judgment.

The plaintiff, his wife and his daughter, were the only witnesses offered to prove the alleged promise by Freeman to pay plaintiff the amount of his deposit.

No one of them testified to a promise to pay.

Plaintiff testified that Freeman presented to him a release of his claim, which he refused to sign; that he said to Freeman that he would have nothing to show for his deposit, and that Freeman said in reply, "you shall have your money out of the assets of the Colorado State Bank

if this settlement goes through." A new release was then drawn, which plaintiff signed.

Again plaintiff testified:

"Mr. Freeman said if I would let my claim go as a deferred claim, he would take the assets of The Colorado State Bank and he would make the money out of it and I should have every nickel out of it. And with five per cent interest added, then: 'And that is not all, you shall have something for the stock you have in this bank.' I don't think that anything was said in that conversation about the $1,400. That was mentioned during the time of that settlement, that week. I told Mr. Freeman I didn't have the money and I asked Mr. Freeman if my going and seeing some person who had that much money in the bank and if they took me for the debt instead of the bank, that is, if that would help any, and he said that was just the same as the cash. As to how I was to be repaid that $1,400.00, Mr. Freeman told me he included all in this statement I have just repeated when I was asking him for something to show what I had in there and told me he would write it out and leave it with my son Ellis."

\* \* \* "Mr. Freeman asked me to take a ranch in the Montezuma Valley at what he called a reduced price, so as to enable me, he says, to get part of the claim that was coming to me from the bank affairs. I told Freeman I didn't feel disposed to take it, and he argued over it a while and finally said, 'If you don't take it, I don't think you will ever get anything more.'

I then told him that I would put it into the hands of an attorney and see what we could do with it. That was before this suit was commenced. At that conversation Freeman said that if I took the ranch I could make at least fifty cents on the dollar that was coming to me on the bank settlement."

This not only fails to show a promise by Freeman to pay, but clearly suggests that the plan was, as Freeman con-

tends, that payment should be made from the assets of the bank.

Plaintiff's wife testified that Freeman said in her presence that "in regard to the money the bank owed Mr. Hampton, he shall have all his money back  *   *   *   he will get it all back with interest."

The daughter testified that Freeman said to her father:

"Evans, you shall not lose one cent of your money; you shall get every cent of it back and with interest, within two years' time, at five per cent interest."

The conversation had been in regard to the bank affairs before that.

This is all the plaintiff's evidence of an obligation on Freeman's part to pay anything, individually, to Hampton, and it falls far short of proving a promise.

If, however, this language could be construed as a promise to pay, the promise is void under the statute of frauds. Between plaintiff, as a depositor, and the bank there existed the relation of debtor and creditor, and the promise was to pay the debt of the bank. Plaintiff and defendant were alike interested in securing a settlement which should relieve them from the pending litigation, both civil and criminal. The release of the claim was, therefore, no consideration for a promise on Freeman's part.

The plea of the statute of frauds was good and the court erred in holding to the contrary.

For the reasons above stated the judgment is reversed and cause remanded with directions to dismiss the action.

Judgment reversed.

Chief Justice Garrigues and Mr. Justice Burke concur.